**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
Case No.: _____

| | |
|---|---|
| **ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.,** **Plaintiff,** **v.** **EXPOSURE SOFTWARE, LLC** **Defendant.** | |

## COMPLAINT

Plaintiff Artificial Intelligence Industry Association, Inc. ("AIIA" or "Plaintiff"), by and through undersigned counsel, brings this action against Defendant Exposure Software, LLC ("Exposure Software" or "Defendant") and alleges as follows:

## INTRODUCTION

1.     This is a civil action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 271(a)-(c). Without Plaintiff's authorization or license, Defendant is promoting, using, selling, and offering to sell its advanced image processing software products, including Exposure X7 and related photo editing tools, featuring sophisticated multi-image processing capabilities, advanced color matching and equalization algorithms, stereoscopic image processing, three-dimensional content generation, and intelligent masking systems through its commercial platform accessible via its website https://exposure.software and distributed as standalone software and plugins for Adobe Photoshop, Adobe Lightroom, and other professional imaging applications to customers within this District and throughout the United States. Additionally, Defendant is inducing infringement by actively promoting and

instructing its customers to use these products in an infringing manner, with specific intent to encourage infringement, as demonstrated through its detailed technical documentation, comprehensive tutorials, user guides, and customer support services that explicitly teach infringing image processing methods including multi-image color matching, stereoscopic processing techniques, and depth-aware rendering capabilities. Defendant contributes to infringement by selling these software products and providing specialized modules that constitute material components of the patented inventions, knowing them to be especially made for use in infringement of the Asserted Patents, having no substantial non-infringing use when deployed for their intended advanced image processing purposes, and constituting material parts of the inventions. Such infringements are both deliberate and willful and continue despite actual or constructive notice to Defendant.

2.     Plaintiff has spent significant amounts of resources in connection with obtaining its patents as well as enforcement efforts, including legal fees and investigative fees to battle the harm caused by Defendant's infringement actions. Further, Plaintiff seeks damages, including lost profits, reasonable royalties, and enhanced damages under 35 U.S.C. § 284 for Defendant's willful and egregious infringement, and injunctive relief for Defendant's infringement of three U.S. patents: U.S. Patent No. 8,965,121 (the "'121 Patent"), U.S. Patent No. 8,508,580 (the "'580 Patent"), and U.S. Patent No. 9,185,388 (the "'388 Patent") (collectively, "the Asserted Patents"). Prior to filing this complaint, AIIA sent Exposure Software a formal demand letter identifying the Asserted Patents and asserting that Exposure

Software's advanced image processing software products and associated features infringe one or more claims in the Asserted Patents. Despite this notice and AIIA's offer to license the patents on reasonable terms, Exposure Software has continued to promote and, upon information and belief, expanded sales and distribution of the accused products in North Carolina and throughout the United States.

3. Plaintiff seeks preliminary and permanent injunctive relief because: (1) AIIA will suffer irreparable harm without an injunction, as Exposure Software's continued infringement directly competes with AIIA's offerings in the advanced image processing and computational photography market, causing injuries that are difficult to quantify and cannot be remedied through monetary damages alone; (2) remedies available at law, including monetary damages, are inadequate to fully compensate for the long-term competitive injury to AIIA, particularly given Exposure Software's extensive customer base and continued development of infringing features; (3) considering the balance of hardships between the parties, equitable relief is appropriate because Exposure Software, upon information and belief, could modify or suspend use of the accused technology or implement non-infringing alternatives, whereas AIIA risks sustained loss of its competitive foothold in the rapidly evolving computational imaging market; and (4) the public interest favors enforcement of patent rights and preserving fair competition, particularly where alternative technologies exist in the market and proper licensing would promote continued innovation. Plaintiff therefore seeks temporary and permanent injunctions enjoining Defendant from further infringing conduct, including making, using, selling, and

offering to sell the accused software and services in the United States without license from Plaintiff.

## THE PARTIES

4.     Plaintiff AIIA is a Florida corporation with a principal place of business at 8875 Hidden River Parkway, Tampa, Florida 33637. AIIA is the assignee and current owner of all rights, title, and interest in the Asserted Patents, having acquired such rights by assignment from 3DMedia Corporation, including the right to enforce the patents and pursue remedies for infringement. The assignments transferring ownership of the Asserted Patents to AIIA have been duly recorded with the U.S. Patent and Trademark Office.

5.     Defendant Exposure Software, LLC is a North Carolina limited liability company with a principal place of business at 320 E. Geer Street, Durham, North Carolina 27701. Upon information and belief, Exposure Software conducts substantial business in North Carolina by developing, marketing, and selling its advanced image processing software products, including Exposure X7 and related tools, to customers throughout North Carolina and the United States via its website, https://exposure.software, and through various distribution channels. Exposure Software, formerly known as Alien Skin Software, has been developing sophisticated image processing software since 1993 and operates its primary development, engineering, and business operations from its Durham, North Carolina headquarters. The company specializes in advanced image processing algorithms, multi-image processing workflows, color matching and equalization technologies, stereoscopic

image processing capabilities, and computational photography tools that directly compete with and infringe upon AIIA's patented technologies.

## **JURISDICTION AND VENUE**

6. This action by Plaintiff is for damages and injunctive relief from patent infringement by Defendant, and arises under the United States Patent Laws, particularly 35 U.S.C. §271 et seq.

7. This Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331 and 1338(a).

8. On information and belief, this Court has personal jurisdiction over Exposure Software consistent with the principles of due process and pursuant to North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4. Defendant maintains its principal place of business, headquarters, and primary operational facilities in Durham, North Carolina, within this District. Defendant purposefully conducts substantial and systematic business activities within North Carolina, including software development, engineering, marketing, sales, customer support, and intellectual property development operations. Defendant infringes Plaintiff's patents by developing, promoting, offering for sale, selling, and/or distributing software products that practice the claimed inventions through its North Carolina-based operations and through distribution via its website and other channels. Plaintiff's claims arise directly from these activities conducted within North Carolina. Defendant has committed and continues to commit acts of patent infringement within North Carolina and this District through its ongoing development, testing, marketing, and distribution of the accused software products. The exercise of

jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

9.     Defendant's substantial business presence and activities in North Carolina satisfy both constitutional due process requirements and North Carolina's long-arm statute. Exposure Software maintains its headquarters, primary development facilities, engineering teams, and key management personnel in Durham, North Carolina, within this District. The company conducts regular, systematic, and continuous business activities within North Carolina, including software development, algorithm research, testing, marketing, sales operations, and customer support services. These activities constitute sufficient minimum contacts to satisfy due process, as Exposure Software has purposefully availed itself of the benefits and protections of North Carolina law through its extensive and ongoing business operations within the state. The exercise of jurisdiction is reasonable and appropriate because Exposure Software has deliberately established and maintained its primary business operations in North Carolina and continues to conduct substantial business activities that directly relate to and give rise to the patent infringement claims at issue.

10.     Defendant has committed and continues to commit acts of infringement, directly and/or indirectly, within this District and the State of North Carolina by, inter alia, making, using, selling, offering for sale, importing, advertising, marketing, and/or promoting software products in this District that infringe one or more claims

of the Asserted Patents and/or inducing others to commit such acts in this District through detailed instructions, tutorials, and technical support.

11.     On information and belief, Defendant owns, operates, and maintains a website (www.exposure.software) that facilitates the offer for sale, sale, distribution, and/or use of the accused infringing software products, which website is accessible by residents within this District and the State of North Carolina and is operated from Defendant's North Carolina-based servers and operations.

12.     Plaintiff's claims of patent infringement arise directly from Defendant's business activities conducted in the state of North Carolina and within this District, including software development, algorithm implementation, testing, marketing, sales, distribution, and customer support operations conducted from Defendant's Durham, North Carolina headquarters, and facilities.

13.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendant has its principal place of business and headquarters located in Durham, North Carolina, within this district, and has committed acts of infringement in this district through its development, testing, marketing, sale, distribution, and support of the accused software products. Defendant maintains a regular and established place of business in this district through its headquarters and primary operations facility at 320 E. Geer Street, Durham, North Carolina 27701, where it conducts software development, algorithm research, business operations, marketing activities, and customer support services.

## THE PATENTS

14.    Plaintiff is the owner of the entire right, title, and interest in and to, including the right to sue and collect damages for past infringement of, U.S. Patent No. 8,965,121 ("the '121 Patent"), titled "Image Color Matching and Equalization Devices and Related Methods," which was duly and legally issued by the United States Patent and Trademark Office on February 24, 2015 in the name of the inventor, Michael McNamer. A true and correct copy of the '121 Patent is attached as **Exhibit A**.

15.    The '121 Patent claims innovative methods and devices for image color matching and equalization that enable sophisticated color processing across multiple images of a scene. The patent addresses the technical challenge of achieving consistent color balance and tonal matching when processing multiple photographs, particularly in scenarios involving overlapping portions of scenes captured under varying lighting conditions. Claim 1, for example, includes critical steps such as determining overlapping portions of a scene within first and second images, generating arrays of color channel differences between corresponding pixels in the overlapping portions, applying quantization techniques to create sparse difference color matrices that efficiently represent color transformation data, filling empty locations in sparse matrices with interpolated values using sophisticated mathematical interpolation algorithms, and modifying pixel color values through inverse look-up operations in the sparse tables to achieve precise color matching and equalization across image pairs.

16.     Plaintiff is the owner of the entire right, title, and interest in and to, including the right to sue and collect damages for past infringement of, U.S. Patent No. 8,508,580 ("the '580 Patent"), titled "Methods, Systems, and Computer-Readable Storage Media for Creating Three-Dimensional (3D) Images of a Scene," which was duly and legally issued by the United States Patent and Trademark Office on August 13, 2013 in the name of the inventors, Michael McNamer, Marshall Robers, Jason Paul Hurst, and Tassos Markas. A true and correct copy of the '580 Patent is attached as **Exhibit B**.

17.     The '580 Patent claims groundbreaking methods, systems, and computer-readable storage media for creating three-dimensional images of a scene through sophisticated computational processing of multiple captured images. The patent solves the technical problem of automatically generating high-quality stereoscopic content from conventional digital photographs without requiring specialized 3D capture equipment. Claim 1, for example, encompasses essential steps including receiving a plurality of captured images of a scene, determining matching image features among the plurality of captured images using advanced computer vision techniques, determining transformations required to align the matched image features through mathematical transformation calculations, applying the transformations to create properly aligned image pairs, calculating parallax values of the matched image features to determine depth information, determining whether the calculated parallax values meet predetermined criteria for comfortable stereoscopic viewing, and altering stereoscopic characteristics of the image pair to

create adjusted image pairs optimized for three-dimensional image generation and display.

18. Plaintiff is the owner of the entire right, title, and interest in and to, including the right to sue and collect damages for past infringement of, U.S. Patent No. 9,185,388 ("the '388 Patent"), titled "Methods, Systems, and Computer Program Products for Creating Three-Dimensional Video Sequences," which was duly and legally issued by the United States Patent and Trademark Office on November 10, 2015 in the name of the inventors, Michael McNamer and Tassos Markas. A true and correct copy of the '388 Patent is attached as **Exhibit C**.

19. The '388 Patent claims innovative methods, systems, and computer program products for creating three-dimensional video sequences through advanced processing of two-dimensional video content. The patent addresses the technical challenge of generating compelling 3D video content from conventional 2D video sequences by implementing sophisticated algorithms for depth analysis, object classification, and stereo displacement processing. Claim 1, for example, includes comprehensive steps such as utilizing two-dimensional video sequences comprising multiple frames of image data, selecting target frames based on motion analysis and content evaluation, selecting subsets of frames representative of different stereo displacements to create depth variation, identifying and classifying static and moving objects within the video frames using advanced computer vision algorithms, extracting depth data and spatial relationships for both static and moving objects, and combining depth values with original frame data to generate enhanced three-

dimensional video frames suitable for stereoscopic display and immersive viewing experiences.

<u>**DEFENDANT'S DIRECT, INDUCED,**</u>
<u>**AND CONTRIBUTORY INFRINGEMENT**</u>

20.     According to Defendant's website, technical documentation, marketing materials, and publicly available information, Exposure Software designs, develops, markets, offers for sale, sells, distributes, and provides ongoing support for sophisticated image processing software products that directly infringe the Asserted Patents. Specifically, Defendant provides Exposure X7 and related image processing tools that feature advanced multi-image processing capabilities, sophisticated color matching and equalization algorithms, stereoscopic image processing and three-dimensional content generation features, intelligent masking and selection systems, depth-aware rendering capabilities, and advanced computational photography tools. These systems and methods are designed for professional photography workflows, creative image processing, and advanced digital imaging applications, enabling users to process, enhance, and transform digital images using the patented methods claimed in the Asserted Patents, as promoted and documented on www.exposure.software and through Defendant's comprehensive technical documentation and user support materials.

21.     Defendant's infringing activities include, but are not limited to, the implementation and distribution of Exposure X7's advanced color matching and equalization features that process multiple images of scenes to achieve consistent color balance across image sequences. Through its sophisticated color grading tools

and multi-image processing workflows, Defendant's software determines overlapping portions of scenes within multiple imported images, generates arrays of color channel differences between corresponding pixels in overlapping portions, applies quantization techniques to create efficient color transformation matrices, fills empty matrix locations with interpolated values using advanced mathematical algorithms, and modifies pixel colors through inverse look-up operations—functionality that directly practices the methods claimed in the '121 Patent. Defendant's promotional materials explicitly describe these color matching capabilities as enabling users to achieve "gorgeous color adjustments" and "refined grading tools that give total control of image color" across multiple images, demonstrating commercial exploitation of the patented technology.

22. Furthermore, Defendant's Exposure X7 software implements sophisticated multi-image processing capabilities that enable the creation of three-dimensional content from conventional two-dimensional photographs. The software receives multiple captured images, determines matching features among the images using advanced computer vision algorithms, applies geometric transformations to align image features, calculates depth and parallax information, and generates enhanced three-dimensional presentations—capabilities that necessarily practice the methods claimed in the '580 Patent. Defendant's technical documentation describes the software's ability to process "multiple images" with "advanced selection tools" and "flexible masking and layers" that "enable you to blend effects in any way you can

imagine," indicating the implementation of the sophisticated image alignment and depth processing techniques protected by the '580 Patent.

23.     Additionally, Defendant's software includes video processing and multi-frame image processing capabilities that implement the methods claimed in the '388 Patent. Exposure X7 processes video sequences and multi-frame content, selects target frames based on content analysis, identifies and classifies objects within frames, extracts depth information, and combines processing results to generate enhanced video content with three-dimensional characteristics. Defendant's marketing materials describe the software's capability to handle "fast image switching" and process sequences of images, while technical reviews confirm the software's ability to work with "video sequences" and apply sophisticated processing to "multi-frame image processing" workflows.

24.     The '121 Patent discloses fundamental image color matching and equalization devices and methods that address the critical technical challenge of achieving consistent color balance across multiple images of a scene, particularly when images are captured under varying lighting conditions or with different camera settings. This technology is directly implemented and commercially exploited in Exposure Software's color grading capabilities, tone mapping algorithms, multi-image processing workflows, and advanced color adjustment tools that enable professional photographers and image processing specialists to achieve precise color consistency across image collections and panoramic compositions.

25.     Exposure Software directly infringes Claim 1 of the '121 Patent by performing sophisticated color-matching and tonal equalization methods across imported images through its advanced color processing algorithms. Specifically, Defendant's software determines overlapping portions of scenes within multiple images by analyzing imported image content and identifying common visual elements and spatial relationships, generates arrays of color channel differences between corresponding pixels in the overlapping portions through mathematical analysis of RGB and color channel data, applies quantization techniques to create sparse difference color matrices that efficiently represent color transformation relationships, fills empty locations in the sparse matrices with interpolated values using sophisticated interpolation algorithms that ensure smooth color transitions, and modifies pixel colors through inverse look-up operations in the sparse tables to achieve precise color matching and equalization across image pairs and sequences. These operations are performed automatically by Defendant's software during color grading workflows and are essential to the software's advertised color matching and equalization capabilities.

26.     The technical implementation of Defendant's color matching system necessarily practices the '121 Patent claims through its processing of overlapping image regions, generation of color difference matrices, application of quantization algorithms, interpolation of missing data values, and inverse transformation operations that modify pixel values to achieve color consistency. Defendant's marketing materials promote these capabilities as enabling "gorgeous color

adjustments" with "refined grading tools" that provide "total control of image color," while technical documentation describes the software's ability to apply color corrections across multiple images and achieve professional-quality color matching results.

27. Exposure Software directly infringes Claim 1 of the '580 Patent by receiving multiple captured images through its import and file management systems, determining matching image features among the captured images using advanced computer vision and feature detection algorithms embedded within the software, determining transformations required to align the matched image features through mathematical calculations and geometric analysis, applying these transformations to create properly aligned images suitable for further processing, calculating parallax values of the matched image features to determine depth relationships and spatial displacement, determining whether the calculated parallax values meet predetermined criteria for optimal visual presentation, and altering stereoscopic characteristics of the image pairs to create adjusted image pairs optimized for three-dimensional presentation and enhanced visual effects. These operations are integral to Defendant's multi-image processing workflows and are automatically performed when users employ the software's advanced masking, layer blending, and multi-image composition features.

28. The '580 Patent addresses the fundamental technical challenge of creating high-quality three-dimensional images from conventional two-dimensional photographs without requiring specialized capture equipment. Defendant's Exposure

X7 software implements these patented methods through its sophisticated image alignment capabilities, depth-aware processing features, multi-layer composition tools, and advanced masking systems that enable users to create compelling three-dimensional visual effects and enhanced image presentations. Defendant's technical documentation and user guides explicitly describe these capabilities and provide detailed instructions for employing the infringing features.

29. Exposure Software directly infringes Claim 1 of the '388 Patent through its comprehensive video processing and multi-frame image processing capabilities that utilize two-dimensional video sequences and image sequences comprising multiple frames of visual data, select target frames based on motion analysis, content evaluation, and user-specified criteria, select subsets of frames representative of different temporal positions and viewing angles to create enhanced visual presentations, identify and classify static and moving objects within the processed frames using advanced computer vision algorithms integrated into the software, extract depth data and spatial relationships for identified objects through sophisticated analysis of frame content and inter-frame relationships, and combine depth values with original frame data to generate enhanced multi-dimensional presentations suitable for advanced visual effects and immersive viewing experiences. These capabilities are fundamental to Defendant's video processing workflows and are actively promoted as key features of the software.

30. Defendant directly infringes under 35 U.S.C. § 271(a) by making, using, selling, and offering for sale the accused software products in the United States,

including through its operations in North Carolina and distribution via its website and authorized channels. Based on technical documentation, marketing materials, user reviews, and publicly available information, Defendant exercises direct control over and performs each step of the claimed methods through its development, testing, deployment, marketing, and ongoing support of the accused software, including all infringing features and capabilities described herein. Defendant's software automatically performs the patented methods when users employ the relevant features, and Defendant provides the technical infrastructure, algorithms, and user interfaces necessary to practice the claimed inventions.

31.     On information and belief, Defendant actively induces infringement under 35 U.S.C. § 271(b) by specifically encouraging and providing detailed instructions to customers, including those in the United States and this District, to use its software in manners that directly infringe the Asserted Patents. Defendant provides comprehensive tutorials, user guides, technical documentation, video demonstrations, and implementation resources through its website, customer support channels, and user community platforms that facilitate and encourage the use of the infringing features. Defendant's instructional materials explicitly demonstrate how to employ the software's color matching, multi-image processing, and advanced imaging capabilities in ways that practice the claimed methods. Defendant had actual knowledge of the Asserted Patents at least as of the date it received AIIA's formal demand letter identifying the patents and the infringing conduct. Despite this knowledge and AIIA's offer to engage in licensing discussions,

Defendant continued to promote, support, and encourage the use of its software in manners that practice the claimed methods, demonstrating specific intent to encourage infringement.

32. On information and belief, Defendant's promotional materials, technical specifications, user documentation, and marketing communications describe features and capabilities of its software that directly align with and implement the technologies claimed in the Asserted Patents. These materials include detailed descriptions of the software's advanced color matching and equalization algorithms, multi-image processing workflows, stereoscopic image processing capabilities, depth-aware rendering techniques, three-dimensional content generation features, and video sequence processing capabilities. Defendant's marketing emphasizes the software's ability to achieve "gorgeous color adjustments," provide "total control of image color," enable "flexible masking and layers," and deliver "advanced image processing techniques"—all of which correspond to the patented methods. These representations, coupled with Defendant's targeted marketing to professional photographers, digital imaging specialists, and creative professionals in the United States, support a strong inference of specific intent to encourage use of the software in manners that infringe the Asserted Patents.

33. On information and belief, Defendant contributes to infringement under 35 U.S.C. § 271(c) by offering, providing, and distributing specialized software modules, algorithms, and functional components within its products that implement each element of the claimed methods. These modules and components are specifically

designed, engineered, and optimized for the infringing functionalities, have no substantial non-infringing use when deployed for their intended purposes within the software's advanced image processing workflows, and constitute material parts of the patented inventions. The color matching modules, multi-image processing algorithms, stereoscopic processing components, and video sequence analysis tools are integral to the software's core functionality and are specifically designed to achieve the results protected by the Asserted Patents. Additional confirmation of these infringing features and their technical implementation may be obtained through discovery, including examination of software specifications, source code analysis, internal architecture documentation, development records, and technical design materials. Based on Defendant's widespread distribution and licensing of its software to customers throughout the United States, substantial revenue generation from sales of the accused products, and ongoing development and enhancement of the infringing features, AIIA has suffered and continues to suffer significant monetary damages from Defendant's infringement. AIIA seeks damages for Defendant's infringement, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284.

## INJUNCTIVE RELIEF

34.     AIIA will suffer irreparable harm absent injunctive relief as a result of Defendant's ongoing and continuing infringement of the Asserted Patents. AIIA and Defendant compete directly in the field of advanced image processing software, computational photography tools, and digital imaging technologies, particularly in developing and offering sophisticated software solutions for professional photo

editing, image enhancement, and advanced visual effects processing. AIIA has invested millions of dollars over many years in researching, developing, and patenting its innovative technologies, which represent the foundation of its competitive position, market differentiation, and commercial offerings in the rapidly evolving computational imaging market. Defendant's unauthorized use and commercial exploitation of the patented methods through its widely distributed software products threatens to erode AIIA's market share, reduce valuable licensing opportunities with other industry participants, diminish the value and exclusivity of its intellectual property portfolio, and cause lasting competitive harm that cannot be fully quantified or remedied through monetary damages alone.

35.     Defendant's unauthorized use and commercial exploitation of AIIA's patented technologies has directly caused quantifiable harm to AIIA, including documented erosion of market position in the advanced imaging software sector, systematic pricing pressure from Defendant's competitive offerings that incorporate the infringing technologies, and significant loss of competitive advantage and market differentiation in the computational photography market. On information and belief, professional photographers, digital imaging specialists, and creative professionals have chosen Defendant's software offerings due in part to the advanced features and capabilities that practice the patented methods, including the sophisticated color matching, multi-image processing, and three-dimensional content generation capabilities. These market developments have contributed to reputational harm, reduced licensing opportunities, and impaired AIIA's ability to command premium

pricing and maintain market leadership based on its technological innovations. As a result, AIIA's ability to maintain and expand its market position has been materially and irreparably harmed. Monetary damages alone are insufficient to address these cumulative competitive harms, particularly given the ongoing nature of the infringement and the continued development and enhancement of the infringing features.

36.     AIIA is informed and believes, and on that basis alleges, that Defendant knew or should have known that its software products were especially made or adapted to facilitate infringement of the Asserted Patents, as evidenced by: (1) Defendant's sophisticated involvement in the advanced imaging software industry and its long history of developing complex image processing algorithms since 1993, demonstrating technical knowledge and expertise in the relevant technological fields; (2) specific product documentation, technical specifications, and marketing materials describing software features and capabilities that implement the claimed methods; (3) promotional materials and user guides demonstrating the software's specialized capabilities for color matching, multi-image processing, and three-dimensional content generation that directly correspond to the patented technologies; (4) technical specifications and user documentation showing the dedicated purposes and optimized design of the software modules for achieving results that align with the patented processes; and (5) the specialized nature of the advanced imaging algorithms and the lack of alternative implementations that would achieve the same sophisticated results without practicing the claimed methods. These materials and circumstances

suggest that the software was deliberately designed and engineered to achieve results that align with and implement the patented processes and based on current information and technical analysis, lacks substantial non-infringing uses for its most advanced and commercially significant features.

37.     AIIA will suffer irreparable harm absent an injunction because Defendant's infringement directly causes AIIA to lose market share, customer relationships, and valuable licensing opportunities in the competitive advanced imaging and computational photography market. First, regarding irreparable harm, Defendant's unauthorized use, and commercial exploitation of AIIA's patented technologies enables direct competition for the same professional photographers, imaging specialists, and creative professionals who represent AIIA's target market, resulting in the loss of not only immediate sales and licensing opportunities but also long-term customer relationships, strategic partnerships, and follow-on business opportunities. The specialized and relationship-driven nature of professional imaging software implementations means these business relationships, once lost to competitors using infringing technologies, are extremely difficult to recover due to high switching costs, significant learning curves, established workflow integrations, and multi-year licensing and support commitments. Second, monetary damages are inadequate because the competitive harm extends beyond quantifiable lost sales to include broader market effects such as price erosion (evidenced by Defendant's ability to offer competitive pricing through use of efficient infringing methods developed by AIIA), reputational damage and loss of market leadership, reduced opportunities for

strategic partnerships and technology licensing, and lost market momentum in a rapidly evolving technological field where being first-to-market with advanced capabilities often determines long-term competitive positioning and market leadership. Third, the balance of hardships strongly favors AIIA because Defendant has the technical resources, engineering expertise, and financial capability to implement non-infringing alternatives or engage in good-faith licensing negotiations, while AIIA faces permanent competitive displacement, loss of technological differentiation, and fundamental damage to its innovation-based business model and market position. Fourth, the public interest supports an injunction because protecting valid patent rights in advanced imaging and computational photography technology encourages continued investment in research and development, promotes innovation that ultimately benefits consumers and professional users, and maintains the incentive structure necessary for continued technological advancement in this important field.

38. Defendant's alleged infringement is willful and egregious, justifying enhanced damages and other remedies. On information and belief, Defendant had pre-suit knowledge of the Asserted Patents based on its sophisticated and long-standing involvement in the advanced imaging software industry, including its participation in professional imaging forums and industry events, monitoring of competitor offerings and technological developments as evidenced by its competitive positioning and feature development, maintenance of its own intellectual property portfolio demonstrating familiarity with patent landscapes and freedom-to-operate

analysis in this technological field, and the publicly available nature of the Asserted Patents which are readily discoverable through standard patent searches in the relevant technology areas. Despite this knowledge or reasonable opportunity for knowledge, Defendant continued developing, marketing, and deploying software features and capabilities that align with and practice the patented technologies, without seeking a license from AIIA, implementing available non-infringing alternatives, or designing around the patented methods. Defendant's post-notification conduct—including the continued promotion, enhancement, and commercial exploitation of the accused features following receipt of AIIA's demand letter—demonstrates deliberate disregard for AIIA's clearly established patent rights and constitutes willful infringement. Such behavior supports a finding of willfulness under applicable legal standards and may justify enhanced damages under 35 U.S.C. § 284.

39.    AIIA has sustained significant and irreparable economic harm from Defendant's infringing activities that cannot be adequately compensated by monetary damages alone. Based on AIIA's internal market analysis, licensing efforts, and understanding of competitive conditions in the advanced imaging software market, Defendant's competing software products have gained substantial market share and customer acceptance through use and commercial exploitation of the infringing technologies that were developed through AIIA's substantial research and development investments. Upon information and belief, customers including professional photographers, digital imaging specialists, creative agencies, and

commercial imaging operations have specifically cited Defendant's advanced color matching capabilities, multi-image processing features, and sophisticated imaging algorithms as key factors in their software selection and purchasing decisions—features that directly practice the patented methods. These lost market opportunities represent not just immediate monetary losses, but lasting competitive harm to AIIA's market position, technological leadership, licensing revenue potential, and role in shaping innovation standards and technological advancement within the computational imaging field. In this technology-driven and relationship-dependent market, lost customer engagements, reduced licensing opportunities, and competitive disadvantages significantly impact long-term business development, market reputation, and strategic positioning.

### COUNT I: PATENT INFRINGEMENT OF U.S. PATENT NO. 8,965,121

40.    The allegations of each preceding paragraph are incorporated herein by reference as if fully restated herein.

41.    Pursuant to 35 U.S.C. § 282, the '121 Patent is presumed valid and enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

42.    Defendant has had actual knowledge of Plaintiff's assertion of infringement of the '121 Patent since the date it received AIIA's formal demand letter identifying the patent and describing the infringing conduct in detail.

43.    Exposure Software has infringed and continues to infringe at least Claim 1 of the '121 Patent under 35 U.S.C. § 271(a) by making, using, selling, and offering for sale its Exposure X7 software and related image processing tools, which

directly practice the claimed method for image color matching and equalization through implementation of sophisticated color processing algorithms that determine overlapping portions of scenes within multiple images, generate arrays of color channel differences, apply quantization techniques to create sparse difference color matrices, fill empty locations with interpolated values, and modify pixel colors through inverse look-up operations. Exposure Software induces infringement under 35 U.S.C. § 271(b) by encouraging customers to use its software in infringing manners through comprehensive tutorials, user guides, technical documentation, and customer support that explicitly demonstrate and promote use of the color matching and equalization features. Exposure Software contributes to infringement under 35 U.S.C. § 271(c) by providing specialized modules and algorithmic components within its software that are specifically designed for implementing the infringing method, have no substantial non-infringing use when deployed for their intended advanced color processing purposes, and constitute material components of the patented invention.

44.    Plaintiff's patent registrations are valid, in full force and effect, unrevoked and uncanceled.

45.    As alleged above, these infringing software products and associated features have not been authorized in any manner by Plaintiff, nor has Defendant ever been authorized or otherwise granted the right to use, offer for sale, sell, or distribute image processing software implementing color matching and equalization methods according to the '121 Patent.

46.     On information and belief, Defendant's actions relating to the development, offer for sale, and sale of the accused infringing products were conducted by and for the benefit of Defendant, generating substantial revenue through sales and licensing of the software products.

47.     As a result of its infringement of the '121 Patent, Defendant has damaged and continues to damage Plaintiff. Defendant has derived and received gains, profits, and commercial advantages from the aforesaid acts of infringement through its ability to offer competitive software products with advanced color processing capabilities, and Plaintiff has lost profits, licensing opportunities, and market position and has otherwise been damaged. Defendant is liable to Plaintiff in an amount to be determined at trial that adequately compensates Plaintiff for Defendant's infringement of the '121 Patent, which by law cannot be less than a reasonable royalty.

48.     Plaintiff seeks a judgment that Defendant directly infringed, induced infringement of, and contributed to infringement of one or more claims of the '121 Patent by the development, offer for sale, sale, and distribution of the accused infringing products in the United States.

49.     Upon information and belief, Defendant has continued its infringement despite notice of the patent and offers to engage in licensing discussions, making such infringement willful and egregious, making this an exceptional case under 35 U.S.C. § 285 and entitling Plaintiff to attorney's fees under 35 U.S.C. § 285 and treble damages under 35 U.S.C. § 284.

50.     The harm to Plaintiff resulting from Defendant's infringing acts is irreparable, continuing, not fully compensable by monetary damages, and will continue unless permanently enjoined by this Court.

## COUNT II: PATENT INFRINGEMENT OF U.S. PATENT NO. 8,508,580

51.     The allegations of each preceding paragraph are incorporated herein by reference as if fully restated herein.

52.     Pursuant to 35 U.S.C. § 282, the '580 Patent is presumed valid and enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

53.     Defendant has had actual knowledge of Plaintiff's assertion of infringement of the '580 Patent since the date it received AIIA's formal demand letter identifying the patent and describing the infringing conduct.

54.     Exposure Software has infringed and continues to infringe at least Claim 1 of the '580 Patent through its sophisticated multi-image processing capabilities, stereoscopic image processing features, and three-dimensional content creation tools by receiving multiple captured images through its import systems, determining matching image features among the images using advanced computer vision algorithms, applying geometric transformations to align the matched features, calculating parallax values to determine depth relationships, determining whether parallax values meet predetermined criteria, and altering stereoscopic characteristics to create optimized three-dimensional image presentations. The software's advanced masking tools, layer blending capabilities, multi-image composition features, and depth-aware processing functions directly implement and practice the claimed

methods. Exposure Software induces and contributes to infringement through the same mechanisms described above, including detailed user instruction and provision of specialized software components designed for the infringing functionality.

55.     Plaintiff's patent registrations are valid, in full force and effect, unrevoked and uncanceled.

56.     As alleged above, these infringing software products and associated features have not been authorized in any manner by Plaintiff, nor has Defendant ever been authorized or otherwise granted the right to use, offer for sale, sell, or distribute image processing software implementing three-dimensional image creation methods according to the '580 Patent.

57.     On information and belief, Defendant's actions relating to the development, offer for sale, and sale of the accused infringing products were conducted by and for the benefit of Defendant.

58.     As a result of its infringement of the '580 Patent, Defendant has damaged and continues to damage Plaintiff. Defendant has derived and received gains, profits, and commercial advantages from the aforesaid acts of infringement, and Plaintiff has lost profits, licensing opportunities, and market position and has otherwise been damaged. Defendant is liable to Plaintiff in an amount to be determined at trial that adequately compensates Plaintiff for Defendant's infringement of the '580 Patent, which by law cannot be less than a reasonable royalty.

59.     Plaintiff seeks a judgment that Defendant directly infringed, induced infringement of, and contributed to infringement of one or more claims of the '580 Patent by the development, offer for sale, sale, and distribution of the accused infringing products in the United States.

60.     Upon information and belief, Defendant has continued its infringement despite notice of the patent and offers to engage in licensing discussions, making such infringement willful and egregious, making this an exceptional case under 35 U.S.C. § 285 and entitling Plaintiff to attorney's fees under 35 U.S.C. § 285 and treble damages under 35 U.S.C. § 284.

61.     The harm to Plaintiff resulting from Defendant's infringing acts is irreparable, continuing, not fully compensable by monetary damages, and will continue unless permanently enjoined by this Court.

**COUNT III: PATENT INFRINGEMENT OF U.S. PATENT NO. 9,185,388**

62.     The allegations of each preceding paragraph are incorporated herein by reference as if fully restated herein.

63.     Pursuant to 35 U.S.C. § 282, the '388 Patent is presumed valid and enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

64.     Defendant has had actual knowledge of Plaintiff's assertion of infringement of the '388 Patent since the date it received AIIA's formal demand letter identifying the patent and describing the infringing conduct.

65.     Exposure Software has infringed and continues to infringe at least Claim 1 of the '388 Patent through its comprehensive video processing capabilities

and multi-frame image processing features by utilizing two-dimensional video sequences and image sequences comprising multiple frames, selecting target frames based on content analysis and processing criteria, selecting subsets of frames with different temporal and spatial characteristics to create enhanced presentations, identifying and classifying static and moving objects within the processed content using advanced computer vision algorithms, extracting depth data and spatial relationship information for the identified objects, and combining depth values with original frame data to generate enhanced multi-dimensional video presentations suitable for advanced visual effects and immersive viewing experiences. These capabilities are fundamental components of the software's video processing workflows and are actively promoted and supported by Defendant. Exposure Software induces and contributes to infringement through the same mechanisms described above.

66.    Plaintiff's patent registrations are valid, in full force and effect, unrevoked and uncanceled.

67.    As alleged above, these infringing software products and associated features have not been authorized in any manner by Plaintiff, nor has Defendant ever been authorized or otherwise granted the right to use, offer for sale, sell, or distribute image processing software implementing three-dimensional video sequence creation methods according to the '388 Patent.

68. On information and belief, Defendant's actions relating to the development, offer for sale, and sale of the accused infringing products were conducted by and for the benefit of Defendant.

69. As a result of its infringement of the '388 Patent, Defendant has damaged and continues to damage Plaintiff. Defendant has derived and received gains, profits, and commercial advantages from the aforesaid acts of infringement, and Plaintiff has lost profits, licensing opportunities, and market position and has otherwise been damaged. Defendant is liable to Plaintiff in an amount to be determined at trial that adequately compensates Plaintiff for Defendant's infringement of the '388 Patent, which by law cannot be less than a reasonable royalty.

70. Plaintiff seeks a judgment that Defendant directly infringed, induced infringement of, and contributed to infringement of one or more claims of the '388 Patent by the development, offer for sale, sale, and distribution of the accused infringing products in the United States.

71. Upon information and belief, Defendant has continued its infringement despite notice of the patent and offers to engage in licensing discussions, making such infringement willful and egregious, making this an exceptional case under 35 U.S.C. § 285 and entitling Plaintiff to attorney's fees under 35 U.S.C. § 285 and treble damages under 35 U.S.C. § 284.

72. The harm to Plaintiff resulting from Defendant's infringing acts is irreparable, continuing, not fully compensable by monetary damages, and will continue unless permanently enjoined by this Court.

## COUNT IV: TEMPORARY INJUNCTION

73. The allegations of each preceding paragraph are incorporated herein by reference as if fully restated herein.

74. AIIA is entitled to a preliminary injunction pursuant to 35 U.S.C. § 283 and Federal Rule of Civil Procedure 65. A preliminary injunction is appropriate where the plaintiff demonstrates:

A. A likelihood of success on the merits;
B. A likelihood of irreparable harm in the absence of preliminary relief;
C. That the balance of equities favors the plaintiff; and
D. That an injunction serves the public interest.

*See eBay Inc. v. MercExchange*, 547 U.S. 388, 391 (2006); *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 926-30 (Fed. Cir. 2012).

75. Based on the specific facts alleged above regarding AIIA's patent rights, competitive position, and Exposure Software's conduct, AIIA satisfies each element required for a preliminary injunction:

76. Defendant's software products directly infringe the Asserted Patents by implementing and practicing the claimed methods for color matching and equalization, three-dimensional image creation, and video sequence processing. The evidence includes: (1) Defendant's own technical documentation and marketing materials describing software features that directly correspond to the claimed

methods; (2) detailed technical specifications showing implementation of color processing algorithms, multi-image processing capabilities, and advanced imaging features that practice the patented inventions; (3) user reviews, technical analyses, and publicly available documentation demonstrating the accused functionality. Defendant also indirectly infringes through inducement and contributory infringement, as evidenced by its comprehensive tutorials, user guides, and customer support materials that encourage and facilitate use of the infringing features. The Asserted Patents are presumed valid under 35 U.S.C. § 282, and no substantial question of invalidity has been raised.

77. AIIA faces concrete and irreparable harm from Defendant's continued use and commercial exploitation of the patented technologies, including: (1) Lost licensing opportunities with professional photographers, imaging specialists, and technology companies who have adopted Defendant's software products that implement the patented methods; (2) Erosion of market share and competitive position in the rapidly evolving advanced imaging and computational photography market where technological leadership and first-mover advantages determine long-term market success; (3) Diminished reputation and market standing as a technology innovator when competitors use and commercialize AIIA's patented methods without authorization; (4) Loss of strategic partnerships and collaborative opportunities that depend on AIIA's exclusive control of the patented technologies. The technology-driven and relationship-dependent nature of the advanced imaging software market

means these losses cannot be adequately quantified or remedied through monetary damages alone, particularly given the ongoing and increasing nature of the harm.

78. The balance of hardships strongly favors AIIA. While Defendant would need to temporarily modify or suspend specific infringing features or engage in good-faith licensing negotiations, AIIA continues to suffer permanent and irreversible damage to its core competitive position, technological differentiation, and licensing-based business model. Defendant has substantial technical resources, engineering expertise, and financial capabilities (including revenue from the infringing products) that enable it to pursue non-infringing alternatives, implement design-around solutions, or negotiate appropriate licensing arrangements. The advanced color processing, multi-image processing, and video sequence processing capabilities could be modified to use non-infringing methods, and alternative technical approaches are available in the market. In contrast, AIIA cannot recover lost customers, licensing opportunities, and market position once competitors have established market presence using the infringing technologies.

79. The public interest strongly favors injunctive relief because: (1) Protecting valid patents in the advanced imaging and computational photography sectors encourages continued innovation and investment in research and development that ultimately benefits consumers, professional users, and the broader technology ecosystem; (2) Enforcement of intellectual property rights maintains fair competition and prevents unauthorized free-riding on costly research and development investments; (3) Alternative non-infringing software products and

technologies remain available in the market, ensuring continued access to advanced imaging capabilities for users; (4) Proper licensing and technology transfer would actually benefit the public by ensuring sustainable innovation funding, promoting continued technological advancement, and enabling broader access to the patented technologies through appropriate licensing arrangements.

80. Pursuant to Fed. R. Civ. P. 65(d), AIIA respectfully requests that the Court enter a preliminary injunction enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them, from engaging in the following acts during the pendency of this action:

81. Manufacturing, marketing, distributing, selling, or licensing the accused software products, including Exposure X7 and related image processing tools, or any product not more than colorably different from them, that incorporates the infringing color matching and equalization, multi-image processing, three-dimensional content creation, or video sequence processing features;

82. Encouraging, instructing, or enabling customers to use the accused software products in manners that practice the patented methods, including through tutorials, user guides, technical documentation, or customer support services;

83. Publishing documentation, promotional materials, or instructional content that depicts, endorses, or facilitates the use of the accused features that practice the claimed methods.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment, an award of equitable relief, and monetary relief against Defendant as follows:

A. Enter judgment that Defendant has infringed one or more claims of the Asserted Patents under 35 U.S.C. §§ 271(a), (b), and/or (c);

B. Enter temporary, preliminary, and permanent injunctions pursuant to 35 U.S.C. § 283 and Fed. R. Civ. P. 65, enjoining Defendant, its officers, agents, employees, and all persons acting in concert with them, from continued infringement of the Asserted Patents through the manufacture, marketing, distribution, or support of the accused software products or any product not more than colorably different. Plaintiff has suffered and continues to suffer irreparable harm, including loss of market position in the advanced imaging software sector, erosion of customer relationships and licensing opportunities, and diminished competitive advantage and technological differentiation. Plaintiff asserts that these harms cannot be adequately remedied by monetary damages due to the specialized nature of the technology market, the relationship-driven business model, and the ongoing competitive effects, and are likely to continue absent injunctive relief, warranting equitable intervention;

C. Award damages adequate to compensate for Defendant's infringement, including lost profits and reasonable royalties, and enhanced damages under 35 U.S.C. § 284. Plaintiff alleges that

Defendant's infringement is willful based on: (1) Defendant's sophisticated involvement in the advanced imaging software industry since 1993; (2) the availability of the Asserted Patents in public records and their discoverability through reasonable patent searches in the relevant technology areas; (3) Defendant's actual notice of the patents through AIIA's demand letter; and (4) Defendant's continued infringement and enhancement of the accused features despite such notice and the availability of non-infringing alternatives. Plaintiff reserves the right to supplement these allegations with additional evidence obtained during discovery;

D.  Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon Plaintiff's request, applicable Internet service providers, hosting services, and/or domain administrators who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to Defendant's website and associated e-commerce capabilities on www.exposure.software and any other websites being used and/or controlled by Defendant to engage in the business of marketing, offering to sell, and/or selling software products that infringe Plaintiff's patents;

E.  Entry of an Order pursuant to 28 U.S.C. § 1651(a) and the Court's inherent authority, that upon Plaintiff's request, payment

processors, financial institutions, and/or software distribution platforms who are provided with notice of an injunction issued by the Court identify any accounts, transaction records, and contact information known to be associated with Defendant's business operations;

F. Entry of an order that, upon Plaintiff's request, Defendant and any financial institutions, payment processors, banks, or software distribution platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with Defendant's software sales and distribution operations, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein;

G. Entry of an Order requiring Defendant to account and pay Plaintiff for all profits and damages resulting from Defendant's patent infringements, together with appropriate interest thereon; that Defendant be required to account to Plaintiff for, and disgorge to Plaintiff, and to pay to Plaintiff, all the gains, profits, savings and advantages realized by Defendant from its acts of infringement described above;

H. Entry of a judgment and award of Defendant's total profits in an amount subject to proof at trial, pursuant to 35 U.S.C. § 289;

I. Award pre- and post-judgment interest as permitted by law;

J. Entry of an Order finding this case is exceptional under 35 U.S.C. § 285 based on Defendant's willful infringement despite knowledge of the patents and the available opportunity to implement non-infringing alternatives, and awarding Plaintiff its costs, expenses, and disbursements incurred in this action, including reasonable attorney's fees as available by law to be paid by Defendant;

K. Award damages in an amount to be proven at trial for Defendant's infringement, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284;

L. Award enhanced damages up to three times the actual damages pursuant to 35 U.S.C. § 284 based on Defendant's willful and egregious infringement;

M. Order Defendant to provide a full accounting of all software sales, licensing arrangements, customer relationships, and revenues generated from the accused products;

N. Grant such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

This the 8th day of October, 2025.

By:    /s/ Michael G. Newell
               Michael G. Newell
               N.C. Bar No. 39944
               225 Ray Ave., Suite 200
               Fayetteville, NC 28301
               (336) 355 − 6897
               mnewell@theaiia.org
               *Attorneys for Plaintiff*